THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM L. GRAY, Defendant-Appellant.

Fifth District   No. 80-186

Opinion filed August 28, 1981.

John H. Reid and Charles M. Leonhard, both of State Appellate Defender's Office, of Mount Vernon, for appellant.

Donald Weber, State's Attorney, of Edwardsville (Martin N. Ashley and Gaye A. Bergschneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant, William Gray, was charged in the Circuit Court of Madison County with the offense of deceptive practices (Ill. Rev. Stat. 1979, ch. 38, par. 17—1(B)(d)). Following a jury trial, defendant was found guilty as charged and sentenced to the Department of Corrections for the maximum period of three years. From the judgment entered by the trial court, defendant brings this appeal.

On appeal, defendant presents the following issues for review: whether the trial court erred in allowing a non-IPI instruction tendered by the State; whether the trial court erred in failing to instruct the jury, *sua sponte*, as to intent to defraud; whether the trial court erred in denying defendant's pretrial motion to suppress; and whether the trial court erred in refusing to give the second paragraph of the Illinois Pattern Jury Instructions, Criminal, No. 3.02 (1968) (hereinafter cited as IPI Criminal).

This case arose from a series of checks issued at Schnucks Inc. in Collinsville from January 29, 1979, to February 20, 1979. During this

period five checks were issued for purchases totaling approximately $417. The drawer of the checks was the defendant and all checks were returned unpaid by the drawee bank, the Mid-America Bank of Edgemont in East St. Louis, Illinois. The supervisor of the bookkeeping department at Edgemont testified that defendant's account had been closed on August 23, 1978, and notice had been mailed to defendant. On March 15, 1979, a Schnucks Inc. assistant manager reported the matter to the Collinsville Police Department.

On March 14, 1979, defendant was arrested on unrelated charges and was held in the St. Clair County jail. Upon this arrest and following proper *Miranda* warning, writing exemplars were taken in the presence of the arresting officers. On March 19, 1979, a Collinsville police officer questioned the defendant in regard to the information furnished by the Schnucks' assistant manager while the defendant was in the St. Clair County jail.

On March 30, 1979, defendant was charged by information with the offense of deceptive practices and a warrant was served on him while he was in the St. Clair County jail. Writing exemplars were also taken upon this arrest by a Collinsville police officer.

Several pretrial motions were filed. One of the motions was to suppress and exclude the writing exemplars taken upon the March 14, 1979, arrest on the grounds that they were incident to an unlawful arrest. The motion was granted on the basis that the exemplars would be cumulative and unnecessary since more recent exemplars had been taken following the March 30, 1979, arrest. The court granted this motion without ruling on the lawfulness of the March 14, 1979, arrest. On motion by the State to reconsider the granting of the motion to suppress, the trial court reversed its previous decision. The court stated that the reason for granting the motion was no longer valid since the March 30, 1979, exemplars were not representative; thus, the March 14, 1979, exemplars would not be cumulative and unnecessary. The court further stated that the March 14, 1979, arrest was a lawful arrest made on probable cause.

The State introduced expert testimony as to the handwriting of the defendant. The expert testified that after comparing the known handwriting of the defendant, the bank signature card and the exemplars with the writing on the five checks in question, that they were written by the same individual. Defendant, during a custodial interview with the arresting Collinsville police officer, stated that he had no knowledge of the checks being issued to Schnucks and that he had lost his checkbook prior to the time the checks in question were issued.

The defendant objected to two of the instructions given by the trial court. The first was a non-IPI instruction tendered by the State in the exact language of section 17—1(B)(d)) of the Criminal Code of 1961 (Ill.

Rev. Stat. 1979, ch. 38, par. 17—1(B)(d)). The instruction was given over objection. The second was the refusal of the trial court to include the second paragraph of IPI Criminal, No. 3.02, which defines the jury's duty when a case is based solely on circumstantial evidence. The trial court stated that the evidence presented was not entirely circumstantial.

Defendant asserts that the trial court erred in allowing the State's tendered instruction No. 9 to be read to the jury. This non-IPI instruction traces the statutory language of section 17—1(B)(d) of the Criminal Code (Ill. Rev. Stat. 1979, ch. 38, par. 17—1(B)(d)), under which the defendant is charged. Before addressing defendant's specific contention, it is first necessary to examine the language in question. The State's tendered instruction No. 9 provides:

> "Failure to have sufficient funds or credit with the depository when the checks are issued is *prima facie* evidence that the offender knows that it will not be paid by the depository and that he has the intent to defraud." (Emphasis added.)

The objectionable portion of this language is the use of the term "prima facie." "Prima facie" is used in two senses and is therefore ambiguous and often misleading. It is sometimes used as the equivalent of a presumption which here would require or permit the jury to conclude that defendant knew he had insufficient funds on deposit in the bank at the time the checks were issued and, therefore, had the requisite intent to defraud from proof that insufficient funds were, in fact, not on deposit. At the minimum, it would shift the burden of producing evidence, and perhaps the burden of persuasion, onto the defendant. On the other hand it is also used to denote evidence sufficient, as a matter of law, to warrant submission of the case to the fact-finder or, more simply, the making of a submissible case. See 9 Wigmore, Evidence §2494 (Chadbourn rev. 1981).

■■ Although we believe the better view to be that the use of "prima facie" in section 17—1(B)(d) of the Criminal Code (Ill. Rev. Stat. 1979, ch. 38, par. 17—1(B)(d)) is instructive to the court in its determination of submissibility (see McCormick, Evidence §342 and n. 26, at 803 (2d ed. 1972)), it is unnecessary to decide that question inasmuch as the use of the term, in an issues instruction, in either of the two senses is objectionable. As stated, the use of "prima facie" in determining submissibility involves the use of a legal term to aid the court. Such a term cannot be properly used to instruct a jury, particularly absent an explanation as to its meaning. The use of the term as the equivalent to a presumption has constitutional ramifications. If a reasonable juror could have interpreted "prima facie" as a presumption to shift the burden of production or the burden of persuasion, or to have been conclusive, then there is a conflict with the overriding presumption of innocence afforded the accused in a criminal case. Thus, the failure to instruct the jury as to the nature of the

presumption would result in the deprivation of a fair trial. See *Sandstrom v. Montana* (1979), 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450, and cases cited therein.

In the instant case, defendant asserts that the use of the term "prima facie" in an issues instruction without explanation as to its meaning is potentially misleading to a jury and thus could be harmful and prejudicial to the accused. Such potential prejudice results in the deprivation of a fair trial. The State counters that while it would have been preferable had the court instructed the jury as to the meaning of prima facie, that the "logical conclusion" is that the jurors ignored the term and a disregarded term cannot be said to create harm or prejudice.

■■ We find the State's position untenable. An issues instruction goes to the very heart of a jury trial, to the finding of guilt or innocence. Thus, any error, any term used that may be misleading, must be carefully scrutinized. In *People v. Lawson* (1933), 351 Ill. 457, 462, 184 N.E. 606, 608, a case involving the theft of an automobile, the court instructed the jury that "possession of the stolen property soon after the commission of the offense is *prima facie* evidence of the guilt of the person in whose possession such property was found." (Emphasis added.) The court in *Lawson* held that the instruction was not proper in that case and went on to state that "in no case is it proper to give an instruction on the subject containing the words '*prima facie*' without an explanation of the meaning of the term." 351 Ill. 457, 462, 184 N.E. 606, 608.

■■ In the instant case, the use of the term "prima facie" in an issues instruction was error in that it was potentially prejudicial. Because of the importance of an issues instruction, such error necessitates that the judgment be reversed and the case be remanded.

Although sufficient grounds for reversal have been stated, defendant asserts three additional allegations of error that must be addressed.

Defendant asserts that the trial court erred in failing to instruct the jury, sua sponte, as to intent to defraud. Supreme Court Rule 451 provides that:

> "Whenever Illinois Pattern Instructions in Criminal Cases (IPI-Criminal) contains an instruction applicable * * * to the facts and the governing law, and the court determines that the jury should be instructed on the subject, the IPI-Criminal instruction should be used, unless the court determines that it does not accurately state the law." (Ill. Rev. Stat. 1979, ch. 110A, par. 451(a).)

The instant case involves the use of IPI Criminal No. 13.23 on the definition of deceptive practices and IPI Criminal No. 13.24 on the issues in deceptive practices. Specifically, people's tendered instruction No. 11 provides:

"❋ ❋ ❋

To sustain the charge of deceptive practices, the State must prove the following propositions:

*First*: That the defendant, with intent to obtain control over property of Schnuck's, Inc. issued checks upon a depository; and

*Second*: That the defendant knew that the checks would not be paid; and

*Third*: That the checks were issued as separate transactions within a 90 day period; and

*Fourth*: That the value of the checks was over $150.00 ❋ ❋ ❋"

In *People v. Mitchell* (1977), 50 Ill. App. 3d 120, 365 N.E.2d 185, *appeal denied* (1977), 66 Ill. 2d 634, a case involving the charge of deceptive practices, the defendant contended that the trial court erred in refusing to give her tendered instruction, as amended, on intent to defraud. The court in *Mitchell* gave IPI Criminal Nos. 13.23 and 13.24. The court found that these instructions adequately covered the subject matter of the defendant's tendered instruction and therefore the trial court did not err in refusing the instruction.

■■ The defendant cites *People v. Ogunsola* (1980), 91 Ill. App. 3d 26, 414 N.E.2d 219, as contrary authority on the propriety of IPI Criminal No. 13.24. It should be noted that leave to appeal has been granted on that issue. In the absence of a contrary decision by the Illinois Supreme Court, we find that the instructions given in the instant case are applicable and that they accurately state the law. Therefore, the trial court did not err in failing to instruct the jury, *sua sponte*, as to intent to defraud.

■■ ■ The defendant's next contention is that the trial court erred in denying his pretrial motion to suppress evidence and exclude the writing exemplars taken upon defendant's previous arrest on unrelated charges in that there was no probable cause for that arrest. In ruling on a motion to suppress, it is the trial court's province to determine the credibility of witnesses, and the weight to be given to their testimony, and its finding will not be disturbed unless contrary to the manifest weight of the evidence. (*People v. Wiggins* (1976), 45 Ill. App. 3d 85, 358 N.E.2d 1301; *People v. Patton* (1975), 33 Ill. App. 3d 923, 339 N.E.2d 22.) In the instant case the trial court stated that to have probable cause there must be sufficient evidence to make an arrest, to have reasonable grounds that the person you are arresting committed the offense. We believe this to be a proper statement of the law (see *People v. Fletcher* (1978), 66 Ill. App. 3d 502, 383 N.E.2d 1285; Ill. Rev. Stat. 1979, ch. 38, par. 107—2(c)), and upon careful review of the record we find that there was sufficient evidence introduced to establish probable cause. Therefore, there was no error in denying defendant's motion to suppress.

The defendant's final contention is that the trial court erred in

refusing to give the second paragraph of IPI Criminal No. 3.02. We find this contention to be without merit. The second paragraph of IPI Criminal No. 3.02 is to be given only when the evidence is entirely circumstantial. In the instant case direct evidence was adduced in the form of the bank signature card, handwriting exemplars and expert testimony authenticating the defendant's writing. Therefore, we find no error in the trial court's refusal to give the second paragraph of IPI Criminal No. 3.02.

For the above-stated reasons, we reverse the judgment of the trial court and remand the case for a new trial.

Reversed and remanded.

JONES and HARRISON, JJ., concur.