**2022 IL 127824**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 127824)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
LAURA A. EPSTEIN, Appellant.

*Opinion filed November 28, 2022.*

JUSTICE CARTER delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Anne M. Burke, Neville, Michael J. Burke, Overstreet, and Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1     In this case, the circuit court of Boone County granted the defendant's pretrial motion to exclude the result of her blood-alcohol concentration (BAC) test from blood drawn four hours after a traffic stop. The circuit court held that the test was inadmissible under Illinois Rule of Evidence 403 (eff. Jan. 1, 2011) because its probative value was substantially outweighed by the risk of unfair prejudice given

the facts of this case. The appellate court reversed the trial court's judgment and remanded for further proceedings. For the following reasons, we affirm the appellate court's judgment and remand.

¶ 2                                    I. BACKGROUND

¶ 3        Defendant Laura A. Epstein was charged with three counts of aggravated driving under the influence. Count I alleged that defendant committed the offense by driving under the influence of alcohol while transporting a person under 16 years of age and having previously committed the offense of DUI (625 ILCS 5/11-501(d)(1)(K) (West 2016)). Count II alleged that defendant drove with a BAC of 0.08 or more while transporting a person under 16 years of age and having previously committed the offense of DUI. *Id.* Count III alleged defendant drove with any amount of a drug, substance, or compound or combination thereof in her breath or blood while transporting a person under 16 years of age and having previously committed the offense of DUI. *Id.*

¶ 4        Defendant filed a pretrial motion to exclude her BAC test result of 0.107 obtained from blood drawn pursuant to a search warrant approximately four hours after the traffic stop. Defendant contended, in pertinent part, that the prejudicial effect of admitting the BAC test result would substantially outweigh any probative value because retrograde extrapolation could not be performed to establish her BAC at the time of driving. Thus, defendant sought an order excluding the evidence under Illinois Rule of Evidence 403 (eff. Jan. 1, 2011).

¶ 5        At the hearing on the motion, defendant offered the testimony of Dr. James O'Donnell, an expert in the field of pharmacology and the effects of alcohol on the human body. Dr. O'Donnell testified that he had performed retrograde extrapolation calculations many times and described it as a method of using a known BAC to determine the person's BAC level at an earlier point in time.

¶ 6        Dr. O'Donnell interviewed defendant and reviewed the traffic stop video, video of the field sobriety tests, and video of defendant sitting in the back seat of the squad car. Based on that information and the available facts of this case, Dr. O'Donnell testified that retrograde extrapolation could not be performed to determine defendant's BAC at the time of driving because the time when

defendant's alcohol absorption peaked, and elimination began, could not be determined. Retrograde extrapolation could be performed only if defendant's alcohol absorption had peaked prior to the traffic stop.

¶ 7        Dr. O'Donnell explained that "drinking occurred during the hour before the traffic stop" and alcohol was "being absorbed at the time of the traffic stop." Defendant was stopped at approximately 10 p.m., arrested at approximately 10:30 p.m., and had her blood drawn between 2 and 2:30 the next morning. Based on when defendant stated she last consumed alcohol and how she acted in the police videos, Dr. O'Donnell opined that defendant's alcohol absorption was not complete at the time of the traffic stop. Dr. O'Donnell testified that, when defendant was stopped at 10 p.m., she stood and walked without losing her balance and her speech was not slurred. At 10:30 p.m., however, defendant exhibited "obvious manifestations of intoxication," including slurred speech and altered balance.

¶ 8        Based on defendant's statement to him and his observations, Dr. O'Donnell opined that defendant was still absorbing alcohol following the traffic stop and that her peak absorption occurred sometime after 10:20 p.m. The information available was not sufficient to perform retrograde extrapolation because it was not possible to determine when defendant's alcohol absorption peaked. Thus, he concluded that the BAC test result only proved that defendant consumed alcohol before driving, but there was no way to determine her BAC at the time of driving.

¶ 9        The State did not present any evidence. The trial court found that the BAC test result was probative but, because retrograde extrapolation would be inherently unreliable in this case, its probative value was substantially outweighed by its prejudicial effect. The trial court, therefore, granted defendant's motion to exclude the evidence.

¶ 10       On appeal, the parties continued to dispute whether the evidence was admissible under Illinois Rule of Evidence 403 (eff. Jan. 1, 2011). 2021 IL App (2d) 191059-U, ¶ 19. Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the risk of unfair prejudice or confusion of the issues or the potential for misleading the jury. *Id.* ¶ 28. A trial court's decision under Rule 403 is reviewed for abuse of discretion. *Id.*

¶ 11        Here, the test result was probative of defendant's BAC when she was driving. *Id.* ¶ 29. Although the appellate court was "troubled by the four-hour delay" in obtaining and testing defendant's blood (*id.* ¶ 30), case law demonstrates that the passage of time goes to the weight given to the result, not its admissibility (*id.* ¶ 29 (citing *People v. Torruella*, 2015 IL App (2d) 141001, ¶ 42, *Village of Bull Valley v. Winterpacht*, 2012 IL App (2d) 101192, ¶¶ 13, 15, *People v. Zator*, 209 Ill. App. 3d 322, 332 (1991), and *People v. Call*, 176 Ill. App. 3d 571, 579 (1988)). The appellate court concluded that the trial court erred in finding the probative value of the BAC test result was substantially outweighed by the danger of unfair prejudice. *Id.* ¶ 31. Accordingly, the appellate court reversed the trial court's judgment and remanded for further proceedings. *Id.* ¶ 33.

¶ 12        Justice McLaren dissented, asserting that the trial court properly exercised its discretion in excluding the evidence. *Id.* ¶ 41 (McLaren, J., dissenting). Expert testimony established that the test results were unreliable to determine defendant's BAC at the time of driving. *Id.* Justice McLaren concluded that the introduction of the BAC test result, with no possibility of explanation or context, would clearly result in unfair prejudice, confusion, and misdirection. *Id.* ¶ 43. He, therefore, would have held that the trial court did not abuse its discretion in excluding the BAC test result. *Id.*

¶ 13        We allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Oct. 1, 2021).

¶ 14                                    II. ANALYSIS

¶ 15        On appeal to this court, defendant contends that the trial court properly exercised its discretion in excluding the BAC test result. The probative value of the test result is outweighed by its risk of unfair prejudice because an expert witness testified that the result is inherently unreliable to determine defendant's BAC at the time of driving. The unreliable test result is offered to prove an element of the criminal offense, essentially establishing a mandatory irrebuttable presumption and shifting the burden of persuasion and proof from the State to defendant.

¶ 16        Defendant contends that, based on unreliable evidence, the jury will be allowed to assume that she drove with a BAC over 0.08. The expert witness determined,

however, that the result was useless in assessing defendant's BAC at the time of driving. Defendant maintains that the trial court did not abuse its discretion in excluding the evidence under Rule 403 given the substantial risk of unfair prejudice from presenting the jury with an inherently unreliable BAC test result.

¶ 17     The State responds that defendant's BAC test result is highly probative to show that she had been drinking before she got into the car, that she was intoxicated when she was pulled over, and that her BAC was over 0.08 when she was driving. The evidence is not unfairly prejudicial and does not tend to suggest the decision should be made on an improper or emotional basis. Defendant's BAC is probative only of the question at issue here, whether she consumed alcohol to the point that she was intoxicated while driving.

¶ 18     The State further observes that whether defendant's postarrest BAC is indicative of her BAC while driving depends on if the evidence shows she only drank immediately before driving and that she grew increasingly intoxicated after the traffic stop. Dr. O'Donnell based his opinion on defendant's statement to him that she only drank immediately before driving and on his review of the traffic stop videos, but the factfinder may reach its own conclusions on those points after reviewing the evidence presented at trial. The factual basis for Dr. O'Donnell's opinion would be undermined if the factfinder determined that defendant did not grow increasingly intoxicated during the traffic stop. In that case, the factfinder could conclude that defendant was no longer absorbing alcohol after she was stopped, and there would be no question that her postarrest BAC of 0.107 showed her BAC while driving was far above the legal limit.

¶ 19     The State argues that the underlying facts should be determined by the factfinder. Permitting suppression of evidence based on defendant's own self-serving statements would allow her to avoid liability simply by telling her expert witness that she only consumed alcohol immediately prior to driving. The State, therefore, concludes that the trial court abused its discretion in excluding the evidence under Rule 403.

¶ 20     Generally, evidence is relevant and admissible if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011); see also Ill. R. Evid. 402 (eff. Jan. 1, 2011). "Although

- 5 -

relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ill. R. Evid. 403 (eff. Jan. 1, 2011). The trial court's decision on whether to admit evidence is reviewed for abuse of discretion. *People v. King*, 2020 IL 123926, ¶ 35.

¶ 21    The function of a jury is " 'to assess the credibility of witnesses, weigh the evidence presented, resolve conflicts in the evidence, and draw reasonable inferences from the evidence.' " *People v. Ward*, 2011 IL 108690, ¶ 34 (quoting *People v. Moss*, 205 Ill. 2d 139, 164 (2001)). To perform its function properly, the jury must be given as much relevant, admissible evidence as possible. *Id.* Without that evidence, the reliability of the jury's verdict may be called into question. *Id.*

¶ 22    Accordingly, the plain language of Rule 403 favors admission of relevant evidence. Under the rule, relevant evidence may not be excluded simply because its probative value is outweighed by its prejudicial effect. Rather, by its plain terms, Rule 403 provides for exclusion of relevant evidence only if its probative value is *substantially* outweighed by the risk of unfair prejudice. Ill. R. Evid. 403 (eff. Jan. 1, 2011). The jury is, therefore, placed in its proper position of considering relevant evidence and assigning it the appropriate weight.

¶ 23    In this case, the BAC test result is certainly relevant to the issues. The result, at a minimum, shows defendant consumed alcohol before driving. Indeed, the test result of 0.107, measured from blood drawn approximately four hours after driving, may indicate that defendant consumed a significant amount of alcohol before driving that night. That is relevant to whether she was under the influence of alcohol while driving. The BAC test result is highly probative here regardless of whether retrograde extrapolation may be performed to calculate defendant's BAC while driving.

¶ 24    Defendant, however, contends that the evidence must be excluded as unfairly prejudicial. Defendant's core argument is that the jury will be misled to believe the BAC test result is conclusive proof that she was driving with a BAC over 0.08 when defendant's expert witness testified that the result is inherently unreliable to establish that proposition. The alleged prejudicial impact of the BAC test result is, therefore, based primarily on a potential misuse of the evidence to mislead the jury.

¶ 25 Initially, defendant's argument appears to assume that the BAC test result is admissible only if retrograde extrapolation is performed to establish her BAC while driving. The State, however, is generally not required to provide expert testimony on retrograde extrapolation when a BAC test result is above the statutory limit. See *Winterpacht*, 2012 IL App (2d) 101192, ¶ 13 (holding that, when a BAC test result is above the statutory limit and "a reasonable amount of time elapses between when the defendant was driving and the test, extrapolation evidence is permissible but is not a foundational requirement"); *Torruella*, 2015 IL App (2d) 141001, ¶¶ 41-42 (same). Our appellate court has long held that matters of delay between driving and BAC testing go to the weight of the evidence and must be viewed in light of the surrounding circumstances. *People v. Newman*, 163 Ill. App. 3d 865, 868 (1987) (citing *People v. Kappas*, 120 Ill. App. 3d 123, 128-29 (1983)). Given the facts of a particular case, the jury may reasonably infer that a defendant's BAC at the time of driving was "similar to, if not higher than," the level when it was subsequently tested. *Winterpacht*, 2012 IL App (2d) 101192, ¶ 15. Defendant has submitted expert witness testimony challenging the reliability of the BAC test result to establish her BAC at the time of driving, but that testimony generally goes to the weight of the evidence, not its admissibility.

¶ 26 Contrary to defendant's argument, the risk of unfair prejudice in misleading the jury will be remote if the jury is allowed to consider all the evidence on the BAC test result and assign it the appropriate weight. In this case, the trial court excluded the BAC test result based entirely on the testimony of defendant's expert witness that the result was "inherently unreliable" to determine defendant's BAC at the time of driving. The expert's opinion, in turn, was based on his determination of the underlying facts, namely, his acceptance of defendant's statement that she consumed alcohol immediately before driving and his conclusion from viewing the traffic stop video recordings that defendant became more intoxicated during the traffic stop. Of course, as the State argues, if those underlying factual determinations are not accepted, the expert's opinion testimony is undermined. If the factfinder discounts as self-serving defendant's statement that she drank immediately before driving and concludes that the video recordings do not establish that she became increasingly intoxicated during the traffic stop, then the expert's opinion based on those facts becomes unsupported.

¶ 27    Based on its determinations of fact, the factfinder could conclude that defendant's alcohol absorption peaked before the traffic stop. The BAC test result from blood drawn after the traffic stop would then be indicative of defendant's BAC while driving. Defendant's expert acknowledged that, if defendant's alcohol absorption had peaked prior to the traffic stop, retrograde extrapolation could be used to determine defendant's BAC at the time of the stop.

¶ 28    In sum, Dr. O'Donnell's expert opinion, that the BAC test result is unreliable to show defendant's BAC at the time of driving, is based on defendant's statement to him that she drank immediately before driving and his perception from the video recordings that she continued to become more intoxicated as the stop progressed. Dr. O'Donnell's view of defendant's intoxication during the traffic stop was premised largely on his observations that her balance became unsteady and her speech became slurred. The credibility of defendant's statement on her alcohol consumption and the conclusions after observing the video recordings are factual determinations that may be questioned by the jury. If those underlying factual determinations are not accepted by the jury, the BAC test result may be used to establish defendant's BAC level at the time of driving.

¶ 29    Ultimately, the factfinder should be allowed to weigh the evidence given all the factors in this case. Defendant may certainly present evidence at trial, including Dr. O'Donnell's testimony, to show the potential problems with the BAC test result, and she may argue that the test result is inherently unreliable to establish her BAC at the time of driving. The factfinder may determine that the underlying facts support the expert's findings that defendant consumed alcohol immediately before driving and that her alcohol absorption did not peak until after driving. In that case, the jury may credit the expert's opinion that the test result is inherently unreliable to prove defendant's BAC while driving.

¶ 30    The critical point, however, is that the factfinder should weigh all of these questions of fact and make the credibility determinations required to assign the appropriate weight to the evidence and testimony. The BAC test result will not pose a substantial risk of misleading the jury if the jury is allowed to hear the evidence and make its own determinations of the underlying facts used to formulate the expert's opinion on that evidence. Given the specific facts of this case, we conclude that the probative value of the BAC test result is not "substantially outweighed by

the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 31   We also necessarily reject defendant's related argument that admission of the BAC test result will violate her constitutional right to due process. Defendant contends that admission of the evidence creates an unconstitutional mandatory presumption that she drove with a BAC of 0.08 or more. According to defendant, the appellate court's decision allows admission of unreliable evidence to conclusively prove an element of a criminal offense.

¶ 32   Due process requires the State to prove every element of a criminal offense beyond a reasonable doubt, but the State may rely on certain presumptions in proving those elements. *People v. Pomykala*, 203 Ill. 2d 198, 203 (2003). A permissive presumption allows, but does not require, the trier of fact to infer the existence of the ultimate fact upon proof of the predicate fact. *Id.* The trier of fact is free to accept or reject a permissive presumption. *People v. Watts*, 181 Ill. 2d 133, 142 (1998). Mandatory presumptions, on the other hand, require the factfinder to accept the presumption, and they are *per se* unconstitutional under Illinois law. *Pomykala*, 203 Ill. 2d at 203-04.

¶ 33   The admission of the BAC test result in this case does not create a mandatory presumption. The State still has the burden of proving the elements of the offenses. The BAC test result is not irrebuttable, and the factfinder is not required to accept it. Defendant may submit evidence, including the testimony of Dr. O'Donnell, to show that the BAC test result is unreliable to establish her BAC at the time of driving. Based on the evidence of its reliability, the factfinder may accept or reject the BAC test result for the purpose of showing defendant's BAC at the time of driving. Thus, the admission of the test result does not violate defendant's right to due process. It simply allows the jury to perform its essential function of weighing and assigning the appropriate weight to all relevant evidence.

¶ 34   In sum, we hold that the trial court abused its discretion in excluding the evidence in this case under Rule 403. Accordingly, the appellate court's judgment is affirmed.

¶ 35                                    III. CONCLUSION

¶ 36        For the reasons stated above, we affirm the appellate court's judgment and remand to the trial court for further proceedings.


¶ 37        Appellate court judgment affirmed.

¶ 38        Circuit court judgment reversed.

¶ 39        Cause remanded.